

800-843-7348 - **SOUSA.COM** - 877-843-8443

# Sellan vs. City of  Hermosa Beach

## Transcript Testimony of
## Thomas Thompson

**Date:  04/28/2017**

**Job #: 605469**

Court Reporting − Videoconferencing − Trial Presentation − Nationwide Networking

**Hermosa Beach - Irvine - Riverside - San Diego - Las Vegas**

**Dismantling of this transcript will void the Reporter's Certificate**

Thomas Thompson                                    Sellan vs. City of  Hermosa Beach

 1  position with the DEA.

 2      Q   Don't --

 3      A   Because he was working LA IMPACT and then was

 4  going with the DEA.  He was switching roles.

 5      Q   Weren't you present at a meeting where the DEA

 6  said that an arrestee had indicated that Officer Faulk

 7  was a dirty cop?

 8          MR. SHELDON:  Objection.  Lacks foundation.

 9  Assumes facts not in evidence.  Vague.

10          THE WITNESS:  I don't remember specifically a

11  hundred percent what was said at that meeting, but

12  there was something that came up about that.

13  BY MR. GLAVE:

14      Q   Was this DEA meeting regarding Faulk being a

15  dirty cop, is that separate and distinct from the LA

16  Sheriff investigation regarding false reports on a drug

17  arrest?

18      A   I think it was en -- it was encompassing, not

19  only the false report, but it was encompassing a lot of

20  allegations that occurred in the past.  It was kind of

21  like a plethora of information that was given to the

22  sheriffs.

23      Q   Okay.  The DEA, the meeting with the DEA, do

24  you recall that involving the arrest of Scott Irby and

25  the meeting took place in the downtown -- downstairs

**LUSTIG DECLARATION EXHIBIT E - 2**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

1    conference room?

2        A    I know the name Scott Irby, as part of the

3    investigation.  I guess he was the one who was

4    originally arrested by Faulk.

5        Q    Wasn't he arrested by Sellan and the DEA in

6    2013?

7        A    I believe so.  I can't remember the exact

8    circumstances.

9        Q    In regards --

10        A    I'd have to -- I don't know the -- I may have

11    him mixed up with a guy that Faulk arrested.

12        Q    Do you recall the guy that Faulk arrested

13    being David Aklilu?  And I'll show you a picture of him

14    (indicating).

15        A    Yes, that is, that is the subject.

16        MR. GLAVE:  And for the court reporter, the

17    last name is A-K-L-I-L-U.

18        Q    That was the false report arrest; correct?

19        A    Yes.

20        Q    And then Scott Irby was an arrestee in a drug

21    case that said that he had information that Everett

22    Faulk was a dirty cop.  Do you recall that?

23        A    Yes.

24        Q    You said there were other allegations made

25    regarding Faulk's behavior in the past during this

**LUSTIG DECLARATION EXHIBIT E - 3**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

1        Q    During your time at Hermosa Beach, were you

2    aware of allegations that Officer Faulk began a sexual

3    relationship with a domestic violence victim or

4    arrestee?

5             MR. SHELDON:  Objection.  Relevance.

6             THE WITNESS:  It was part of a --

7             MR. SHELDON:  Hold on.

8             To the extent it calls for information

9    protected by Penal Code Section 832.7, it violates

10   Officer Faulk's right to privacy to the extent that

11   you know of it through an internal affairs

12   investigation.

13            THE WITNESS:  Right.  I was aware of it based

14   on it was an internal affairs investigation.

15   BY MR. GLAVE:

16       Q    Prior to you -- did you conduct the

17   investigation?

18       A    No.

19       Q    So how did you learn of it as this was part of

20   an internal affairs investigation?

21       A    As my position as a lieutenant.

22       Q    Did you review it for disciplinary purposes?

23       A    I believe Lieutenant Gaines did.

24       Q    So you didn't do the investigation, and you

25   didn't review it?

**LUSTIG DECLARATION EXHIBIT E - 4**

Thomas Thompson                                          Sellan vs. City of Hermosa Beach

1        A    Uh-huh.

2        Q    What information did you learn regarding the

3    allegation that Everett Faulk had a sexual relationship

4    with a domestic violence arrestee?

5        A    I think that's private in the IA, and I can't

6    speak to it.  I don't have any firsthand knowledge.

7        Q    Did you review the IA?

8        A    I don't remember typing it up.  I don't

9    remember following through -- making recommendations on

10   it.

11       Q    That would be a potential criminal allegation

12   but definitely a violation of policy; correct?

13            MR. SHELDON:  Objection.  Same objection.

14   Again, Penal Code 832.7.

15            THE WITNESS:  I'm not gonna answer that.

16   BY MR. GLAVE:

17       Q    Well, I'm not asking for information in the IA

18   investigation.

19            Based on your knowledge of the allegation,

20   that could be potentially a criminal allegation, but

21   definitely would be a policy violation; correct?

22            MR. SHELDON:  I think to answer the question,

23   he has to go back to his knowledge of what's in the

24   internal affairs investigation.  So I don't know how he

25   can answer it otherwise.

M&C Corporation (Sousa Court Reporters)                              Page: 29

**LUSTIG DECLARATION EXHIBIT E - 5**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

```
 1            MR. GLAVE:  Okay.
 2       Q   Aside from anything you learned in the IA,
 3   based on your 30 years of experience, an allegation
 4   against any officer that he or she began a sexual
 5   relationship with a domestic violence arrestee could be
 6   a criminal violation, but definitely would be a policy
 7   violation; correct?
 8       A   It would definitely be a violation of policy.
 9       Q   Okay.
10       A   Or it could be -- right.  It could go either
11   way, but definitely it would be against policy.
12       Q   Just so I have a clear record.  That could
13   result in a criminal allegation as well?
14            MR. SHELDON:  Objection.  Vague and lacks
15   foundation.
16            THE WITNESS:  I'm trying to think of what
17   criminal --
18   BY MR. GLAVE:
19       Q   Rape under the color of authority?
20       A   They --
21            MR. SHELDON:  Objection.  Calls for
22   speculation
23            THE WITNESS:  I can't -- you know, I would
24   have to look into that.  I'm not sure what criminal
25   section might be -- hypothetically under any officer
```

**LUSTIG DECLARATION EXHIBIT E - 6**

Thomas Thompson                                          Sellan vs. City of  Hermosa Beach

1    being investigated for this, it could be turned over to

2    downtown DA's office, the DA handling those types of

3    cases to look at.

4            MR. GLAVE:  Okay.

5        Q   Were you aware of allegations that Everett

6    Faulk was holding guns illegally?  They weren't

7    registered to him?  They didn't transfer to him?

8            MR. SHELDON:  I have the same objection as

9    previously that to the extent that your knowledge of it

10   is through your role, either reviewing an internal

11   affairs investigation or your role in conducting such

12   investigations, you should not answer that, but if you

13   can answer it otherwise based on your personal

14   observations or the things of that nature, you can

15   answer.

16           THE WITNESS:  It did come out of an IA

17   investigation.  I'm not going to answer it.

18   BY MR. GLAVE:

19       Q   Did you conduct that IA investigation?

20       A   I remember reviewing -- there was something

21   about it that I was involved in about that issue.

22       Q   Did you conduct the IA?

23       A   What year was the IA investigation?

24       Q   They haven't produced it yet.

25       A   I can't recall that.  I can't remember if I --

**LUSTIG DECLARATION EXHIBIT E - 7**

```
 1   I don't recall doing the IA investigation --

 2        Q   Do you recall --

 3        A   -- as a sergeant, in that capacity.

 4        Q   Do you recall Officer Cahalan in Redondo Beach

 5   Police Department coming to you with the allegation

 6   that Everett Faulk was holding guns for a convicted

 7   felon?   So this is before any IA started, the actual

 8   complaint came to you.

 9            MR. SHELDON:  You can answer that.

10            THE WITNESS:  Yes.

11   BY MR. GLAVE:

12        Q   Who from Redondo Beach brought that to you?

13        A   I don't recall who exactly, Eric Cahalan or

14   somebody else, a sergeant or lieutenant of the SIU

15   unit.

16        Q   It's against policy for officers to associate

17   with convicted felons; correct?

18            MR. SHELDON:  Objection.  Vague.  Lacks

19   foundation.

20            THE WITNESS:  I think under our general

21   policies and procedures is what you're asking?

22   BY MR. GLAVE:

23        Q   Yes.

24        A   It would be nice to have the policies and

25   procedures here to look at.  I don't remember anything
```

**LUSTIG DECLARATION EXHIBIT E - 8**

Thomas Thompson                                         Sellan vs. City of Hermosa Beach

1   about convicted felons, but there is a section in the

2   Ethics Section regarding, you know, who you associate

3   with, but I don't know the exact wording.  I'd have to

4   look at the policies and refresh my memory.

5        Q   It's a potential criminal charge to take

6   possession of weapons without going through the proper

7   transfer and title process; correct?

8        A   There's a legal way to transfer and --

9            MR. SHELDON:  Objection.  Calls for a legal

10  conclusion and lacks foundation.

11           Go ahead.

12           THE WITNESS:  There's a legal way to transfer

13  ownership, yes, and you have to follow and go through

14  DOJ, Department of Justice.

15  BY MR. GLAVE:

16       Q   And the allegation that was brought to you was

17  Faulk never went through this process; correct?

18       A   Correct.

19       Q   Do you recall who the convicted felon was?

20       A   No.

21       Q   Were you ever made aware of allegations that

22  Officer Faulk had a mistress that was confronting

23  officers on duty?

24           MR. SHELDON:  Objection.  Relevance.

25           THE WITNESS:  Say that one more time.  I'm

**LUSTIG DECLARATION EXHIBIT E - 9**

1    just trying to -- say it again.  I just didn't -- it

2    didn't click.

3    BY MR. GLAVE:

4        Q   Sure.  Were you ever made aware that Officer

5    Faulk had a mistress and the mistress was confronting

6    officers on duty?

7            MR. SHELDON:  Objection.  Relevance.  Lacks

8    foundation.  Vague.

9            THE WITNESS:  So Faulk had a mistress who was

10   confronting officers?

11   BY MR. GLAVE:

12       Q   Yes.

13       A   Verbally confronting officers?

14       Q   Yes.

15       A   I don't remember that.

16       Q   Do you recall Officer Sellan and other

17   officers bringing this to your attention, and you said

18   that the mistress has a right to freedom of speech?

19       A   I don't remember that.

20       Q   Do you recall informing sergeants that any

21   time that there was a call related to this person,

22   supervisors would respond?

23           MR. SHELDON:  Objection.  Assumes facts not in

24   evidence.  Vague.  Lacks foundation.

25           THE WITNESS:  I can't say it's this one, this

**LUSTIG DECLARATION EXHIBIT E - 10**

```
 1   incident.  I remember during my years of that there
 2   are -- there were some circumstances that I can't
 3   remember the basis behind them where we told them a
 4   supervisor would respond, but I can't say it's this
 5   one.
 6   BY MR. GLAVE:
 7        Q    Your email at Hermosa Beach was lt.t.thompson?
 8        A    Well, that's how the word -- that's the name
 9   that they came up with was
10   t.thompson@hermosapolice.org.
11        Q    On the emails it would --
12        A    It shows --
13        Q    -- just show the address?
14        A    Yes.
15        Q    Were you ever made aware of Officer Faulk
16   having ties to the Mongol biker club?
17             MR. SHELDON:  Objection.  Lacks foundation.
18   Vague.
19             THE WITNESS:  Not specifically.  I don't
20   remember.
21   BY MR. GLAVE:
22        Q    In general?
23        A    Something about a motorcycle gang or some
24   something about it, but I can't -- I don't have any
25   specifics.  It's not coming to me.
```

**LUSTIG DECLARATION EXHIBIT E - 11**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

1       Q    What do you recall regarding that?

2       A    Just that's it.  It's just that there was some

3    mention of, you know -- I can't remember what the name

4    of it is or his riding with them or what, or those

5    people that are part of the group.  I don't know.  It's

6    just in general that term you said did -- there was

7    something, but I can't remember exactly what it is

8    specifically.

9       Q    Do you know who Josh Smith is?

10      A    Yes.

11      Q    Who is Josh Smith?

12      A    He's an individual, Frank Hallstein --

13   actually, it's Roxanne's son, Hallstein's son.  He's --

14   I think he still lives in Hermosa.

15          He used to live in Hermosa.  At some point, I

16   remember he got in trouble with the police, and I

17   remember him filing a suit against the Department.

18      Q    Do you know if Josh Smith has any ties to

19   Everett Faulk?

20          MR. SHELDON:  Objection.  Relevance.

21          THE WITNESS:  I can't -- I don't know of any

22   connections.

23   BY MR. GLAVE:

24      Q    Do you know that he dates Faulk's cousins?

25          MR. SHELDON:  Same objection.

**LUSTIG DECLARATION EXHIBIT E - 12**

1      THE WITNESS:  Okay.  I don't have personal

2    knowledge of that.

3    BY MR. GLAVE:

4        Q    What is the Mongol Motorcycle Club?  It is a

5    criminal gang?

6        A    It's been identified as a criminal gang, if

7    you read intelligence reports.

8        Q    Do you know of another motorcycle gang called

9    the "Hermosa Beach Locals"?

10       A    When you use the word "motorcycle," I know

11   Hermosa Beach Locals.  They're a surf -- local surf

12   type gang as, you know, using that term.  They do --

13   over my years here, they do exist, or they did.  I

14   don't know of their current existence.

15       Q    Are you aware of them trying to form a

16   motorcycle gang and affiliate with the Hells Angels?

17       A    No.

18       Q    Did you ever hear that Everett Faulk had

19   connections to the Hermosa Beach Locals?

20       A    No.

21       Q    Have you ever heard that Everett Faulk has

22   ties to drug dealers?

23       A    Yes.

24       Q    What did you hear?

25       A    I'm not sure if it came from Donovan Sellan or

**LUSTIG DECLARATION EXHIBIT E - 13**

1    not, or it came -- something that he would help escort

2    drugs from point A to point B.

3         Q   Is it possible that you heard from sources

4    other than Donovan Sellan?

5         A   It could.

6         Q   Other police sources?

7         A   Other police -- well, I'm trying to think.  I

8    don't know exactly.  I'm thinking it came from Donovan,

9    but it could have come from somebody else.

10        Q   Did Sergeant Scheid ever provide you that

11   information regarding Faulk being tied to drug dealers?

12        A   I don't remember hearing that.

13        Q   Did you hear it from the DEA?

14        A   I can't say for sure where it came from.

15        Q   On the false arrest or the false police report

16   that you had talked about earlier, did that involve

17   Officer Faulk knowing that a drug dealer was going to

18   be in the downtown area?

19        A   Yes.

20        Q   Did that involve the drug dealer having a

21   relationship with a family member of Faulk?

22        A   Yes.

23        Q   And then because the drug dealer broke up with

24   the family member, he alleges Everett Faulk arrested

25   him for that reason?

**LUSTIG DECLARATION EXHIBIT E - 14**

Thomas Thompson                                    Sellan vs. City of Hermosa Beach

```
 1        A    Not the way you put it.

 2        Q    How it was that you understood it?

 3        A    Just exactly that.  That he broke up with the

 4   cousin, and then Everett went down and arrested him.  I

 5   don't think the allegation came from the suspect

 6   himself.

 7        Q    Did you interview the suspect?

 8        A    No, just the reports involved in it.

 9        Q    Do you know if anybody investigated that

10   allegation?  You said the Sheriff's Department did.

11        A    The Sheriff's Department did and also the

12   Police Department did an IA investigation.

13        Q    Did you do that IA investigation?

14        A    I think I might have.

15        Q    Did you interview the arrestee?

16        A    You know what, I'd have to look -- I'd have to

17   look at documents to find out exactly who I

18   investigated -- talked to.

19        Q    Did you clear Officer Faulk in that

20   investigation?

21        A    He was cleared.

22        Q    Do you recall that complaint and investigation

23   occurring in 2010?

24        A    I would have to say approximately because I

25   don't have exact dates.
```

**LUSTIG DECLARATION EXHIBIT E - 15**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

```
 1          Q    And do you recall it being sent to the
 2     Sheriff's Department for investigation in 2013 -- or
 3     excuse me -- 2014?
 4          A    Yes, it was after Chief Papa got here, yes.
 5     She got here September -- end of September 2013.
 6          Q    So there was a four-year delay between the
 7     time that this allegation was investigated by the
 8     Department and when the Sheriff's Department
 9     investigated it?
10          A    Approximately.  I would have to say
11     approximately.
12          Q    Isn't it true that as part of the IA
13     investigation, the arrestee was never interviewed?
14               MR. SHELDON:  Objection.  To answer that
15     question, he's gonna have to disclose what is in the
16     internal affairs investigation.
17               MR. GLAVE:  Or what's not.
18               MR. SHELDON:  Well, that -- I think he's gonna
19     have to disclose what's in the investigation to answer
20     that question.
21               MR. GLAVE:  Let me phrase it this way.
22          Q    Isn't it true that you never conducted an
23     interview with David Aklilu (indicating)?
24          A    I'd have to say I don't think I did, but the
25     sheriffs did in their investigation.
```

**LUSTIG DECLARATION EXHIBIT E - 16**

Thomas Thompson                                        Sellan vs. City of Hermosa Beach

1        Q    Four years later?

2        A    Four years later.

3        Q    Okay.  Going back to Faulk having or holding

4    guns for a convicted felon, was the convicted felon

5    ever interviewed by the Hermosa Beach Police

6    Department?

7             MR. SHELDON:  Objection.  Lacks foundation.

8    Vague.  Assumes facts not in evidence.

9             THE WITNESS:  I don't know.

10   BY MR. GLAVE:

11       Q    Isn't it true that the convicted felon was not

12   interviewed?

13            MR. SHELDON:  Same objections.

14            THE WITNESS:  I can't answer either way.

15   BY MR. GLAVE:

16       Q    Okay.  Were you ever made aware of allegations

17   that Officer Faulk had ties to a Hermosa Beach resident

18   that was believed to be running sugardaddy.com?

19            MR. SHELDON:  Objection.  Relevance.  Lacks

20   foundation.

21            THE WITNESS:  I'm not aware of that.

22   BY MR. GLAVE:

23       Q    Are you --

24       A    It doesn't sound familiar.  I don't know.

25       Q    Are you aware of the Hermosa Beach resident

**LUSTIG DECLARATION EXHIBIT E - 17**

1  that was purported to be running sugardaddy.com?

2      A   That doesn't even sound -- I'm not aware of

3  that.

4      Q   Were you aware of Officer Sellan doing a

5  probation raid on a residence on the upper part of 2nd

6  Street near Prospect of an individual believed to be

7  engaged in prostitution and drugs?

8      A   It's not clicking.  I don't have an answer.

9      Q   Okay.  Were you made aware of allegations that

10  Officer Faulk asked girls out that he pulls over on

11  traffic stops?

12          MR. SHELDON:  Objection.  Relevance.

13          THE WITNESS:  I'm not aware of that.

14  BY MR. GLAVE:

15      Q   Are you aware of allegations that Officer

16  Faulk, while in an area known for prostitution and

17  drugs, had his vehicle stolen?

18          MR. SHELDON:  Objection.  Lacks foundation.

19  Assumes facts not in evidence and vague.

20          THE WITNESS:  I'm not aware of that.

21  BY MR. GLAVE:

22      Q   Are you aware of any time that Officer Faulk

23  was known to be in the Hoover area and his personal car

24  was stolen?

25      A   I'm just -- no.  It's not registering.

**LUSTIG DECLARATION EXHIBIT E - 18**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

1    Q   Were you made aware of Everett Faulk parking

2  his private vehicle in front of the back ramp where

3  arrestees would be brought and having bail bonds

4  placards on his car?

5    A   I never heard that.

6    Q   Are you aware of an off-duty incident with

7  Officer Faulk with an -- that involved the Anaheim

8  Police Department?

9    A   Yes.

10   Q   What are you aware of in that incident?

11   A   I was called by Donovan Sellan when I first

12 arrived at work advising me that Officer Faulk was

13 involved with something with Anaheim Police Department.

14 That he was notified by somebody else that an incident

15 occurred.

16   Q   What type of incident?

17   A   I don't know if it was just an argument or a

18 fight.  They had some encounter with the Anaheim Police

19 Department that was not positive.

20   Q   Was it Officer Faulk being involved in a

21 barroom fight?

22   A   There was a -- okay.  I do not -- I can't say

23 Officer Faulk was involved in the barroom fight, but

24 there was a fight involved in the group he was with,

25 and both he and that group and another group were

**LUSTIG DECLARATION EXHIBIT E - 19**

 1    ejected from the bar.

 2         Q    And then had contact with the Anaheim Police

 3    Department?

 4         A    Right.

 5         Q    Officers are supposed to report contact that

 6    they have with law enforcement agencies even off duty;

 7    correct?

 8              MR. SHELDON:  Objection.  Lacks foundation.

 9    Vague.

10              THE WITNESS:  An officer needs -- I'm trying

11    to think of the wording in the policy.  I would not say

12    every contact with a law enforcement officer needs to

13    be reported.  I would -- I'm not sure if that would

14    qualify as being mandatory that he has to call the

15    Hermosa Beach Police saying, "I just talked to the

16    sergeant from Anaheim police Department" regarding

17    whatever happened.

18    BY MR. GLAVE:

19         Q    Okay.  This incident involved Officer Faulk

20    being drunk and in possession of a weapon; correct?

21              MR. SHELDON:  Objection.  Assumes facts not in

22    evidence.  Lacks foundation.

23              THE WITNESS:  You're assuming he was drunk.  I

24    can't say he was drunk.  He might have been armed off

25    duty, like I would say a lot of officers are, but I

**LUSTIG DECLARATION EXHIBIT E - 20**

1    can't say of his sobriety at that time.

2    BY MR. GLAVE:

3        Q   He was detained by the Anaheim Police

4    Department.  He wasn't just contacted; correct?

5        A   He was talked -- there was a conversation

6    between he and the Anaheim sergeant.

7        Q   And at the time of that conversation, he

8    wasn't free to go; correct?  He was being detained?

9        A   No, I --

10            MR. SHELDON:  Objection.

11            THE WITNESS:  -- disagree.

12            MR. SHELDON:  Lacks foundation.

13            THE WITNESS:  I think it was a consensual

14    encounter.

15    BY MR. GLAVE:

16        Q   How do you know that?

17        A   In talking to the sergeant from Anaheim.

18        Q   Did you --

19        A   The Anaheim sergeant was just trying to get

20    the whole group just to leave, including Officer Faulk.

21        Q   Did you initiate an internal affairs

22    investigation on that?

23        A   Yes.

24        Q   Did you conduct the IA?

25        A   No, because I was lieutenant at the time.  I

**LUSTIG DECLARATION EXHIBIT E - 21**

Thomas Thompson                                                 Sellan vs. City of Hermosa Beach

```
 1            WITNESS' SIGNATURE PAGE UNDER PENALTY OF PERJURY

 2                          *   *   *   *   *

 3

 4

 5        I hereby declare under penalty of perjury under

 6   the laws of the State of California that the foregoing

 7   transcript is my deposition under oath, are the

 8   questions asked of me and my answers thereto; that I

 9   have read same and have made the necessary

10   corrections, additions, deletions or changes to my

11   answers that I deem necessary; that the foregoing is a

12   true and correct transcript of my testimony contained

13   therein.

14

15

16      Executed this              day of                  ,

17         , at                              , California.
     (Year)                 (City)

18

19

20

21

22

23                         Signature of the Witness
                               (Monica Bagnara)

24

25
```

**LUSTIG DECLARATION EXHIBIT E - 22**

Thomas Thompson                                                    Sellan vs. City of Hermosa Beach

```
 1            CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

 2                      *   *   *   *   *

 3            I, TAMMY R. PAGEAU-HINES, CSR No. 8413 in

 4    and for the State of California, do hereby certify:

 5            That the foregoing proceedings were taken

 6    before me at the time and place therein set forth, at

 7    which time the witness was put under oath by me; that

 8    the testimony of the witness and all objections made

 9    at the time of the proceedings were recorded

10    stenographically by me and were thereafter transcribed

11    under my direction; that the foregoing is a true

12    record of the testimony and of all objections made at

13    the time of the proceedings.

14            I further certify that I am neither counsel

15    for nor related to any party to said action nor in

16    any way interested in the outcome thereof.

17        That dismantling, unsealing or unbinding of the

18    original transcript will render the Reporter's

19    Certificate null and void.

20            Dated this 8th day of May 2017.

21

22

23                    Tammy R. Pageau-Hines

24

25                    TAMMY R. PAGEAU-HINES, CSR
```

**LUSTIG DECLARATION EXHIBIT E - 23**